UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERRANCE T. TAYLOR,

         Plaintiff,

v.                                        Case No. 3:22-cv-900-BJD-MCR

W. WARD,

         Defendant.
_____

**<u>ORDER</u>**

**I.**    **Status**

Plaintiff, an inmate of the Florida penal system, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1; Complaint). He is proceeding as a pauper. *See* Order (Doc. 6). One Defendant remains: W. Ward.[1]

Before the Court is Defendant's Amended Motion for Summary Judgment (Doc. 53; Motion). Defendant submitted several exhibits in support of his Motion. *See* Doc. 53-2 (hospital records); Doc. 53-3 (internal movements - job assignments); Doc. 53-4 (Inspector General report); Doc. 53-5 (incident report); Doc. 53-6 (Plaintiff's deposition); Doc. 54 (CD of audio interview of

---

[1] The Court dismissed without prejudice all claims against Defendant John Doe. *See* Order (Doc. 52).

Plaintiff); Doc. 55 (CD of PREA interview of Plaintiff). The Court advised Plaintiff of the provisions of Federal Rule of Civil Procedure 56 and afforded him an opportunity to file a response. *See* Order (Doc. 7). Plaintiff filed a sworn Opposition to Defendant's Motion for Summary Judgment (Doc. 58; Response), along with some of Defendant's discovery responses (Docs. 58-2 to 58-3) and a Declaration (Doc. 58-4). The Motion is ripe for review.

## II.    Plaintiff's Allegations

According to Plaintiff, in the afternoon of August 17, 2020, at Hamilton Correctional Institution, he "was assaulted and left injured by fellow inmates," and Defendant Ward "wit[]nessed [Plaintiff] in a state of duress and refused to give [him] medical assistance." Complaint at 5. Specifically, Plaintiff contends that around 3:00pm, he "was ordered to deliver the confinement laundry cart to G[] dorm Wing #2." Doc. 1-1 at 2. After delivering the laundry, Plaintiff asked Defendant for permission to enter Wing #3, which Defendant granted. *Id.* at 2-3. Plaintiff entered inmate Jeremy Owusu's cell, and then inmate Floyd Peterson also entered the cell. *Id.* at 3. "Plaintiff and Peterson exchanged words," and then the two exited Owusu's cell and proceeded to cell G3-207. *Id.* "While inside of G3-207 Plaintiff was[] assaulted and stabbed [in the left arm and in the abdomen] with a prison made weapon." *Id.* "The wounds to the left arm included two wounds, both wounds caused

massive bleeding and needed stitches, [and] these wounds caused large amounts of bleeding and pain and discomfort." *Id.* The abdominal wound required surgery. *Id.* at 4. Along with the stab wounds and resulting injuries, Plaintiff alleges that he suffered a fractured jaw, swollen face, and three herniated discs in his lower back. *Id.* at 3-4. He also "suffered excessive pain and discomfort." *Id.* at 4.

After Plaintiff was assaulted, around 3:40pm, Defendant entered Wing #3 for a security check. *Id.* Defendant "visually witnessed Plaintiff in a state of distress lying on the floor [of cell G3-207] with apparent stab wounds and bleeding." *Id.* Defendant stated, "Y'all need to clean this mess up!" *Id.*; *see* Doc. 53-6 at 36-37, 39 (Plaintiff testifying at deposition that after he was stabbed, he walked out of Peterson's cell holding an ace bandage on his stomach, but Peterson pulled him back in when Defendant was approaching the cell; and Defendant "seen all the blood, he seen [Plaintiff] and that's when he looked in there and he said y'all need to clean this sh*t up"). "At no time did [Defendant] attempt to assist Plaintiff and get him medical attention for his appearant [sic] needs." Doc. 1-1 at 4.

At approximately 4:00pm, officials announced "'[r]ecall' for count." *Id.* at 5. Defendant "sent his orderly Michael Jackson into G3 to get Plaintiff." *Id.* Plaintiff told inmate Jackson that he could not walk, so Jackson went back to

3

Defendant and relayed the message. *Id.* Defendant ordered Jackson to assist Plaintiff out of the wing and into the barbershop. *Id.*; *see* Doc. 53-6 at 39 (Plaintiff testifying at deposition that inmate Jackson entered the cell and told Plaintiff he needed to leave because officials announced "recall"; Plaintiff responded he could not walk, so Jackson "left and he went out there and he says something to Sarge and he come back in and he say Sarge told me to come get you"). Jackson placed Plaintiff on the floor inside the inmate barbershop. Doc. 1-1 at 5. During his deposition, Plaintiff testified that when he laid on the barbershop floor, "blood started shooting out of [his] stomach," but stopped once he curled into the fetal position. Doc. 53-6 at 40.

During formal count procedures,[2] Defendant "witnessed Plaintiff lying on the floor [of the barbershop] with apparent stab wounds and covered in blood," but he failed to assist Plaintiff or get him medical attention. Doc. 1-1 at 6. After the formal count was concluded, Defendant ordered Plaintiff to "get up," but when Plaintiff advised that he could not stand, Defendant retrieved "the laundry cart and ordered Plaintiff to use it to assist in standing." *Id.*; *see* Doc. 53-6 at 32 (Plaintiff testifying at his deposition that Defendant saw him in the barbershop, "kicked" him, and told Plaintiff "to get the f*ck out of his

---

[2] Count procedures take approximately 45 minutes to one hour. *See* Doc. 53-6 at 40.

4

dorm and don't never come back"). Defendant then personally "escorted Plaintiff to the walkway to G-F dorm and unlocked the gate with his personal key." Doc. 1-1 at 6. Plaintiff asked Defendant "about medical," but Defendant stated, "Stay the f*ck out of my dorm." *Id.*

"Plaintiff proceeded to his assigned cell" in F dorm, and when other inmates saw Plaintiff, they informed the F dorm sergeant. *Id.* at 7. Around 6:00pm, Sergeant Perry entered Plaintiff's cell and immediately informed medical staff of his condition. *Id.* Plaintiff was then transferred to UF Health in Gainesville where he "underwent surgeries." *Id.* At his deposition, Plaintiff estimated that he was stabbed between 3:30pm and 4:00pm, and he was seen by medical staff between 6:30pm and 7:00pm. Doc. 53-6 at 55-56.[3]

Plaintiff lists his injuries as a fractured jaw, swollen head, three stab wounds, three herniated discs in his lower back, and mental injuries. Complaint at 5. He alleges that he was dependent on a cane for six months, he experienced extended pain for over one year, and he suffers from PTSD and depression. Doc. 1-1 at 7. He states that he takes "mental health meds for depression." *Id.* As relief, Plaintiff requests monetary damages and he

---

[3] The prison medical records reflect that Plaintiff was examined at 6:40pm. *See* Doc. 53-4 at 7.

"seek[s] to make it a law for a correctional officer to witness such a[n] act and not react."[4] Complaint at 5.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

---

[4] The Court previously dismissed Plaintiff's claim against Defendant Ward for monetary damages in his official capacity. *See* Order (Doc. 35). Additionally, regarding Plaintiff's request to "make . . . a law," such relief is not available in a civil rights case. Indeed, the Constitution delegates law-making authority to Congress, not to the judiciary. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587-88 (1952). Thus, Plaintiff's request to "make . . . a law" is dismissed.

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. *Id.* Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)). Additionally, a court should accept as true a pro se plaintiff's assertions in his verified

complaint and affidavit attached to his response. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019).

## IV. Analysis of Defendant's Motion

Defendant argues that he is entitled to summary judgment because Plaintiff fails to establish an Eighth Amendment deliberate indifference claim and he is entitled to qualified immunity. *See* Motion at 11-22. The Court addresses each argument in turn.

### A. Deliberate Indifference

Deliberate indifference to a prisoner's serious medical need constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Importantly, however, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. *Id*. at 105.

"To prevail on a claim of deliberate indifference, [a] plaintiff[] 'must satisfy both an objective and a subjective inquiry,' *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003), and must establish a 'necessary causal link' between the challenged conduct and [his] injuries, *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019)." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024). "The objective inquiry turns on whether the plaintiff experienced an 'objectively serious medical need.'" *Id*. (quoting *Farrow*, 320

F.3d at 1243). A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quotations omitted).

> The subjective inquiry, on the other hand, turns on whether the "prison official acted with an attitude of 'deliberate indifference' to [the] serious medical need." *Farrow*, 320 F.3d at 1243. A prison official acted with deliberate indifference if he (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness. *See Farmer v. Brennan*, 511 U.S. 825, 836-40 (1994). As [the Eleventh Circuit] recently reiterated, this third prong will be satisfied only if the plaintiff shows "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (*en banc*). Even when a defendant has subjective knowledge of a serious risk, "a defendant who 'responds reasonably' to [such] a risk . . . 'cannot be found liable' under the Eighth Amendment." *Id.* at 1255 (quoting *Farmer*, 511 U.S. at 845).

*Stalley*, 124 F.4th at 1283-84 (internal citations modified). Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). "As applied in the prison

9

context, the deliberate-indifference standard sets an appropriately high bar." *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir 2020).

Here, Defendant acknowledges that Plaintiff had a serious medical need. *See* Motion at 12. But Defendant contends that Plaintiff cannot show that Defendant acted with deliberate indifference to that need. *See id.* at 12-15. Specifically, Defendant argues that "Plaintiff has given several versions of what happened on the day that he was stabbed," and "the differences presented by the Plaintiff create a transparent sham." *Id.* at 12. According to Defendant, "Plaintiff has only shown that he attempted to conceal his injury and due to his changing versions of events cannot show that [Defendant] knew that Plaintiff was in serious need of medical care." *Id.* at 15.

The Court declines to find that Plaintiff's claim is a "sham" based on Plaintiff's varying versions of what occurred. Indeed,

> [v]ariations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact. An affidavit may only be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such

> an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

*Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (internal quotation marks and citation omitted). Upon review of the record, the Court finds that the variations in Plaintiff's version of events create an issue of credibility that is appropriately resolved by the trier of fact.

Defendant also argues that Plaintiff cannot establish causation. *See* Motion at 15-18. Defendant contends that "Plaintiff fails to provide medical information that there is a casual link between the [D]efendant's indifference and the injuries." Motion at 15. Defendant asserts that Plaintiff readily acknowledges that he was assaulted by another inmate who caused his injuries, and Plaintiff fails "to show that his injuries were exacerbated by the two-hour delay in treatment." *Id.* at 18.

In his Response, Plaintiff avers that due to Defendant's indifference, he "was made to endure the pain and agony of delay." Response at 2. Plaintiff concludes that he has met the causation element. *See id.* at 4.

"To survive summary judgment in a case alleging deliberate indifference, a plaintiff must produce sufficient evidence of . . . causation." *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (internal quotation marks and citation omitted). According to Plaintiff, Defendant saw him in two

separate locations, both times while Plaintiff was in a state of distress, "with apparent stab wounds," and actively bleeding and/or covered in blood. Defendant failed to seek medical attention for Plaintiff either time. Defendant then kicked Plaintiff while Plaintiff was on the floor of the barbershop and ordered him to get up. When Plaintiff advised that he could not stand, Defendant retrieved a laundry cart for Plaintiff to use as an assistive device and escorted Plaintiff out of the dorm.

"Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see Harris v. Coweta Cnty.*, 21 F.3d 388, 393-94 (11th Cir. 1994) ("The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."). Indeed, the Eleventh Circuit has recognized that when an inmate is suffering a serious and painful injury, such as a broken bone, "deliberately indifferent delay, no matter how brief, [may] render defendants liable as if they had inflicted the pain themselves." *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990). "Cases stating a constitutional claim for immediate or emergency

medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

Here, considering the evidence in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact preclude entry of summary judgment. Plaintiff obviously had a serious medical need, and if a jury believes Plaintiff, the jury may conclude that Defendant unnecessarily delayed Plaintiff's receipt of medical care, which caused Plaintiff to continue to suffer extreme pain and agony for hours. Thus, the Court denies Defendant's Motion in this regard.

### B. Qualified Immunity

According to Defendant, "[t]here has simply been no evidence that Plaintiff has established any actions taken by Defendant that violated an established rule, statute, or that any action taken was contrary to constitutional law." Motion at 19.

> Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform while going about their duties. The thought behind the doctrine is the "balanc[ing of] two important public interests: 'the

need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Davis v. Waller*, 44 F.4th 1305, 1312 (11th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Under the balance that qualified immunity strikes, "all but the plainly incompetent or those who knowingly violate the law" enjoy its protection. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether qualified immunity applies, [courts] engage in a burden-shifting analysis. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). At the first step, the public-employee defendant must show that he was acting within the scope of his discretionary authority when he committed the challenged acts. Once the defendant does that, the burden shifts to the plaintiff, who must show that qualified immunity is not appropriate. *Id.* To do that, the plaintiff must establish two things: (1) the defendant violated a constitutional right, and (2) that constitutional right was "clearly established" at the time of the defendant's actions. *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022).

A plaintiff can show that a violation is "clearly established" in any of three ways: (1) by relying on a "materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose;" (2) by invoking "'a broader, clearly established principle [that] control[s] the novel facts' of the case;" or (3) by persuading [the court] that the officer's acts "so obviously violate[ ] th[e] [C]onstitution that prior case law is unnecessary." *Id.* (citation omitted). If a plaintiff proceeds under the first or second method, he must point to a court decision. *Id.* The second and third methods require "obvious clarity." *Id.* That is, the principle must be so apparent

> that, even without a case with similar facts to light the way, any competent officer would know that his conduct crossed the line. *See id.* In sum, the "clearly established" part of the qualified-immunity inquiry asks whether the law when the officer engaged in the challenged conduct gave him "'fair warning' that his conduct was unlawful." *Id.* at 921 (citation omitted).
>
> Courts have "discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first." *Ashcroft v. alKidd*, 563 U.S. 731, 735 (2011). And since a plaintiff must show both prongs to overcome qualified immunity, if the prong the court considers first is not satisfied, the court need not consider the other prong because the officer is entitled to qualified immunity, regardless. *Pearson*, 555 U.S. at 236.

*Brooks v. Miller*, 78 F.4th 1267, 1279-80 (11th Cir. 2023) (internal citations modified).

Here, there is no dispute that during the incident, Defendant was acting within the scope of his discretionary authority as an employee of the Florida Department of Corrections. Thus, the burden shifts to Plaintiff to show that Defendant violated his clearly established constitutional rights.

According to Plaintiff, "the law gave [Defendant] and others fair warning that allowing a severely injured inmate to suffer" violates the Eighth Amendment. Response at 5.[5] He argues that "[n]o clearly established law was

---

[5] Plaintiff also argues that Defendant and others tampered with the surveillance footage, failed to write required reports, and deliberately omitted information from reports to cover up Defendant's actions. *See* Response at 5. Plaintiff seeks a spoliation

15

needed because of obvious clarity in the law and the evil nature wherewith such acts were concealed and carried out." *Id.* Thus, it appears Plaintiff attempts to show that his serious medical needs were so obvious that any reasonable officer would have known that failing to get Plaintiff medical attention would violate the Constitution.

Considering the evidence presented in the light most favorable to Plaintiff,[6] the Court finds that Defendant is not entitled to qualified immunity. There is no dispute that Plaintiff had a serious medical need. Once officials finally learned he needed medical attention, Plaintiff was escorted to medical via wheelchair, and prison medical staff noted that in addition to Plaintiff's abdominal stab wound, he had "muscle deep lacerations" on his left forearm that required sutures, and "gross swelling" on the left side of his face with a "possible broken jaw." Doc. 53-4 at 7. Plaintiff described his forearm as having "two long cuts" which caused his forearm to "bust[] wide open." Doc. 53-6 at 74; *see id.* at 76 ("I don't know how the skin split wide open, how the skin split that

---

instruction at trial. *See id.* The Court declines to address a request for relief made in a response to a motion.

[6] *See Hinson v. Bias*, 927 F.3d 1103, 1118 (11th Cir. 2019) ("As we have noted, we view all facts and draw all reasonable inferences in favor of the non-moving party when reviewing a summary-judgment ruling. This means that we normally take as true the testimony of the non-moving party and adopt his version of the facts in a qualified-immunity case.").

wide open, but they was able to bring it back together."). Prison medical staff immediately sent Plaintiff to an outside hospital where he underwent emergency abdominal surgery and received stitches in his forearm. *See* Doc. 53-2 at 19.

After Plaintiff's altercation with inmate Peterson, Defendant observed Plaintiff over a period of time—in inmate Peterson's cell, in the barbershop, and while walking out of the dorm. During these encounters, Plaintiff contends that he was covered in blood and in a state of distress. Plaintiff's most serious injury, the stab wound to his abdomen which required surgery, may not have been readily visible, but apparently blood from his arm and/or stomach was readily apparent. *See* Doc. 58-4 at 2 (averring that Defendant observed Plaintiff "bleeding profusely" and "covered in blood"). When Defendant escorted Plaintiff out of the dorm, Plaintiff could not walk unassisted. And Defendant did not leave Plaintiff in the custody of other officers or send him to medical. Instead, according to Plaintiff, Defendant escorted him out of the dorm and left him outside of the gate so the only place Plaintiff could go was into the dorm to which he was assigned. Defendant had nothing to do with Plaintiff later obtaining the medical assistance he needed.

If a jury were to believe Plaintiff's version of events, the jury could reasonably find that Defendant violated Plaintiff's clearly established

17

constitutional right to be free from cruel and unusual punishment. Taking Plaintiff's version of the facts as true, a reasonable officer in Defendant's position would have known that failing to obtain medical treatment for an inmate covered in blood, with a "grossly" swollen face and open wound on his forearm, and who cannot walk on his own would violate the Eighth Amendment. And, at the time of the incident, the law was clearly established that a defendant's knowledge of the need for medical care and intentional refusal to provide that care amounted to deliberate indifference. *See, e.g., Harris*, 21 F.3d at 393-94. Additionally, "it was clear [by 1994] that deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition." *Id.* at 394; *Brown*, 894 F.2d at 1538 ("[A]n unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference."). As such, at this stage of the proceeding where the Court must adopt Plaintiff's version of the facts, the Court finds that "[t]he contours of unreasonable delay in providing treatment for serious medical needs were defined with enough particularity to allow a reasonable [officer in Defendant's position] to understand whether his actions were lawful." *Harris*, 21 F.3d at 394. Therefore, Defendant's request for qualified immunity is due to be denied.

Accordingly, it is

**ORDERED**:

1. Defendant's Amended Motion for Summary Judgment (Doc. 53) is **DENIED**.

2. Plaintiff's request to "make . . . a law" is **DISMISSED**. This case will proceed on Plaintiff's Eighth Amendment deliberate indifference claim against Defendant in his individual capacity for monetary damages.

3. The parties shall confer in good faith regarding settlement. The parties are encouraged to maintain a realistic approach in making and considering any settlement offers. If the parties resolve the case, they shall expeditiously file a notice in compliance with Local Rule 3.09(a). If they are unable to settle the case, no later than **April 3, 2025**, the parties shall file a notice advising whether a settlement conference with a United States Magistrate Judge may be beneficial.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of March, 2025.

_____
BRIAN J. DAVIS
United States District Judge

JAX-3 3/7
c:
Terrance T. Taylor, #L06850
Counsel of Record